**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------X

SCOTT KWAAK, JASON JOHNSON, and DWAYNE MCCLARY, individually and on behalf of those similarly situated,

Plaintiffs

vs.

D.D.M. MEDICAL DELIVERY SERVICE, LLC, DEVON MARTINS, and DENNIS MAYERS,

Defendants.

---------------------------------------------------------X

**Case No. 2:26-cv-02726**

**FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**

Plaintiffs Scott Kwaak, Jason Johnson, and Dwayne McClary (collectively "Plaintiffs"), through their attorneys Famighetti & Weinick, PLLC, and the Marlborough Law Firm, P.C., respectfully allege as follows:

## PRELIMINARY STATEMENT

1. Plaintiffs, on behalf of themselves and other similarly situated DDM dispatchers and delivery drivers, bring this action against Defendants, including D.D.M. Medical Delivery Service, LLC ("DDM"), and its owners and operators Devon Martins ("Martins") and Dennis Mayers ("Mayers", collectively with DDM and Martins, "Defendants").

2. The action is brought as a collective action pursuant to the Fair Labor Standards Act of 1938 ("FLSA") for willful failure to pay overtime premium compensation

when due to Plaintiffs and other similarly situated non-exempt dispatchers and delivery drivers when working more than forty hours in a workweek.

3. In addition, the action asserts individual and prospective class action claims under 26 U.S.C § 7434, unjust enrichment, and the New York Labor Law ("NYLL") for willful failure to pay overtime premium pay when due, unlawful deductions, and failure to issue wage statements and notifications of pay rate.

4. The action also asserts claims under the New Jersey Wage and Hour Law ("NJWHL") for willful failure to pay overtime premium pay when due.

5. The DDM Defendants misclassified their dispatchers and delivery drivers as independent contractors rather than non-exempt employees and deprived them of employee wage protections and other rights under the FLSA, NYLL, and NJWHL.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over Plaintiffs Kwaak and McClary's federal FLSA claims pursuant to 29 U.S.C. § 216(b) and 26 U.S.C § 7434 and 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' New York and New Jersey State law claims pursuant to 28 U.S.C. § 1367.

7. The Court has personal jurisdiction over the Defendants because they are domiciled within the State of New York, they conduct substantial business in this State, and the acts and/or omissions giving rise to the claims herein allegedly took place in this State.

8. Venue is proper in the Eastern District of New York because Defendants conduct business in this District and the acts and/or omissions giving rise to the claims herein allegedly took place in this District.

**PARTIES**

9. Plaintiff Scott Kwaak is an individual currently domiciled in the Commonwealth of Pennsylvania.

10. Plaintiff Jason Johnson is an individual currently domiciled in the Commonwealth of Pennsylvania.

11. Plaintiff Dwayne McClary is an individual currently domiciled in the State of New York.

12. Defendant D.D.M. Medical Delivery Service, LLC is a limited liability company that maintains its principal place of business at 75 Nassau Terminal Road, New Hyde Park, New York 11040.

13. Defendant Devon Martins is an individual domiciled in New York. At all relevant times, Defendant Martins was the owner, operator, and Chief Operating Officer of Defendant DDM.

14. Defendant Dennis Mayers is an individual domiciled in New York. At all relevant times, Defendant Mayers was an operator and Chief Executive Officer of Defendant DDM.

15. Defendants Mayers and Martins were each in active control and management of DDM, regulated the employment of persons employed by DDM,

including Plaintiffs, acted directly and indirectly in the interest of DDM in relation to the employees, and were thus employers of Plaintiffs and other similarly situated DDM delivery drivers under the FLSA, the NJWHL, and the NYLL.

16. Defendants Martins and Mayers supervised, hired, fired, and disciplined DDM dispatchers and delivery drivers, determined the pay rates and method of payment of DDM employees, and maintained their employee records.

17. At all times relevant to this action, the DDM Defendants' Medical Delivery Service business was an "enterprise engaged in interstate commerce" within the meaning of the FLSA. The enterprise had an annual gross volume of revenue in excess of $500,000.

**Background**

18. Defendant DDM is a medical delivery service provider that contracts with numerous pharmacies and medical equipment providers to deliver medical materials, including prescription medications to patients, and medical facilities.

19. Since delivery of medical supplies is central to its business, DDM employs numerous dispatchers and delivery drivers to effectuate those deliveries.

20. The DDM Defendants classified all of their dispatchers and delivery drivers as independent contractors rather than employees.

21. DDM dispatchers manage the transport of healthcare items by tracking deliveries and communicating with drivers, customers, pharmacies, and pick-up/drop-

off locations. Defendants also regularly require dispatchers to package deliveries from Defendants' pharmacy clients.

22. DDM Dispatchers are also required to deliver packages outside their regularly scheduled dispatching hours.

23. DDM dispatchers are stationed at several of the Defendants' pharmacy customer locations throughout New York State.

24. DDM delivery drivers are responsible for picking up deliveries from DDM dispatch locations, storing and refrigerating medications overnight in their homes, repackaging medications, and delivering packages to patients and medical facilities in New York and New Jersey.

25. Defendants often required DDM delivery drivers to pick up the medical deliveries from the dispatch location the evening before their scheduled shift and keep them overnight.

26. Defendants further required DDM drivers to segregate and remove the pharmacy packaging from prescription medications that required refrigeration and store those medications in their home refrigerators. In addition, delivery drivers were required to repackage those prescription medications with extra bags and labels marked "Refrigerate Upon Arrival" provided by the pharmacies. Plaintiffs and other delivery drivers were not compensated for this work.

27. DDM delivery drivers make their deliveries using vehicles weighing less than ten thousand pounds.

28. A small number of delivery drivers in Manhattan use motorized bicycles to perform their deliveries. Motorized bicycle delivery drivers have often been paid less than the New York minimum wage.

29. Plaintiffs and some other DDM delivery drivers and dispatchers were required to make interstate deliveries in New York and New Jersey. *See* Exhibit A, why-ddm webpage, located at https://www.ddmmedicaldelivery.com/why-ddm/ ("Why-DDM Webpage," last visited April 29, 2026, ("We deliver across the 5 boroughs, Long Island (Nassau & Suffolk Counties), Westchester County, Rockland County, Ulster & Dutchess Counties, Putnam County, Orange County, Northern, and Central New Jersey, and we are quickly expanding Upstate covering 10 counties for Hospice."). After the lawsuit was filed, the website was taken offline.

**Defendants' Misclassification Scheme**

30. At all relevant times, Plaintiffs and other DDM dispatchers and delivery drivers were employees of Defendants as defined by the FLSA, the NYLL, and when making deliveries in New Jersey, the NJWHL, as demonstrated by, among other things, the high level of control Defendants maintained over the manner in which such employees performed their jobs.

31. Defendants DDM, Mayers, and Martins maintained a policy and practice of misclassifying DDM dispatchers and delivery drivers as independent contractors, rather than employees. Defendants issue these employees an annual IRS Form-1099.

Defendants also fail to make social security contributions, maintain workers' compensation, and maintain unemployment insurance coverage for their employees.

32. Defendants' decision to classify DDM dispatchers and delivery drivers as independent contractors is a central company policy and did not vary on a person-to-person basis.

33. Defendants DDM, Mayers, and Martins exercise comprehensive control over the manner, means, details, and methods by which drivers perform services for Defendants.

34. Defendants use GPS and other technology to track their Plaintiffs and other delivery drivers' locations. *See* Why-DDM Webpage ("We use License Monitor to monitor driver's licenses in real time 24 hours a day").

35. DDM maintains constant communication with and supervision of delivery drivers on the road. *See* Why-DDM Webpage ("[Our clients] can use our portal to dispatch, track, and communicate with our central hub as well as drivers. … Client dispatchers can send direct notifications and text messages to drivers straight from the portal. Drivers can answer through their mobile applications and respond to their inquiries in real-time. All alerts come in the form of emails, push-notifications, text messages, and phone calls").

36. Defendants DDM, Martins, and Mayers regularly disciplined DDM dispatchers and delivery drivers for any number of reasons, including: declining to accept deliveries many miles away from the drivers' other deliveries, declining to

comply with Defendants' demand that they make extra deliveries that are not part of their usual responsibilities, absences, tardiness, taking approved unpaid time off, and running behind schedule.

37. Forms of discipline imposed by Defendants DDM, Martins, and Mayers included withholding wages of individual employees, harsh admonishment, suspension, termination, cutting drivers' delivery loads, or assigning them undesirable deliveries outside their normal coverage areas.

38. Defendants maintain that they have "backup drivers" to "cover any route or single delivery as needed." *See* Why-DDM Webpage.

39. In fact, there are no backup drivers.

40. Defendants DDM, Martins, and Mayers ensure those deliveries are made by using coercive disciplinary tactics and threats against their dispatchers and delivery drivers to make those additional deliveries.

41. For example, in early 2022, Defendant Martins suspended Plaintiff Kwaak for a period of several weeks because he declined a delivery that was more than thirty miles away from his other deliveries.

42. In June 2021, Defendants terminated Plaintiff Johnson for a similar infraction because he declined to make deliveries in New Jersey, more than fifty miles from his dispatch location, after the completion of his dispatcher shift on Long Island.

43. Defendants supplied Plaintiffs and other DDM delivery drivers and dispatchers with uniforms, consisting of medical scrubs bearing the DDM logo, and required them to wear those uniforms while on duty.

44. Defendants required Plaintiffs and other DDM dispatchers and delivery drivers to carry and display DDM identification cards while on duty.

45. DDM publicly represents to potential customers that: “All [its] drivers wear uniforms and have company I.D. badges with color photos. Drivers who do not comply will not be allowed to leave with their routes.” *See* Why-DDM Webpage.

46. Defendants required Plaintiffs and other DDM delivery drivers and dispatchers to request permission for vacation and other time off, frequently denied such requests, and disciplined workers for taking even approved time off.

47. Plaintiffs and other DDM delivery drivers and dispatchers had no opportunity for profit or loss without Defendants.

48. Plaintiff Johnson and other DDM dispatchers were paid by Defendants on a flat salary basis with additional payments for after-hours deliveries.

49. Plaintiff, Kwaak, and other DDM delivery drivers were paid by Defendants on a flat salary basis, a per-delivery basis, or on a hybrid salary/per-delivery basis.

50. Plaintiffs and other DDM delivery drivers and dispatchers did not operate an independently established trade, occupation, profession, or business.

51. Plaintiffs and other DDM delivery drivers depended on Defendants' business for the opportunity to render services to Defendants' customers.

52. Plaintiffs and other DDM delivery drivers and dispatchers were not permitted to provide deliveries for other companies.

53. Indeed, when Defendants learned that workers were performing deliveries for other companies, Defendants terminated, suspended, and/or otherwise penalized those employees by, among other ways, reducing their deliveries, which correlated to reduced income for those workers.

54. Plaintiffs and other DDM delivery drivers and dispatchers' relationship with Defendants was neither temporary nor sporadic.

55. Defendants publicly boast about their low driver turnover rate and the long tenure of their drivers, stating, "DDM Medical Delivery Service does not have a high driver turnover rate. Our longest tenure is 20 years, and the most recent driver hired was 1 year ago." *See* Why-DDM Webpage.

56. Plaintiff Kwaak worked for Defendants for approximately nine years, while Plaintiff Johnson worked for Defendants for approximately eight years.

**Defendants' No Overtime Policy**

57. Plaintiffs and other DDM dispatchers and delivery drivers were non-exempt employees under the FLSA, NYLL, and NJWHL, misclassified by Defendants as independent contractors.

58. Defendants maintained a policy and practice of not paying Plaintiffs and other DDM dispatchers and delivery drivers overtime premium pay when working in excess of forty hours in a workweek.

59. Moreover, several delivery drivers were regularly paid less than the New York Minimum Wage.

60. Defendants paid Plaintiff Kwaak and other similarly situated delivery drivers and dispatchers a portion of their wages in cash off the books.

61. Plaintiffs and other DDM dispatchers and delivery drivers were not subject to any exemptions from minimum wage and overtime protections under the FLSA or the NYLL.

62. Upon information and belief, DDM's only exempt employees were Defendants Martins and Mayers.

63. Plaintiffs and other DDM delivery drivers regularly worked in excess of forty hours each week and sometimes worked in excess of one hundred hours in a workweek.

64. Plaintiff Kwaak regularly worked one-hundred-hour workweeks as a DDM delivery driver. He often worked fifteen-hour days, seven days a week.

65. Plaintiff Johnson regularly worked more than 72 hours in a workweek as a DDM delivery driver. He often worked twelve or more hours a day, five to six days a week.

66. Moreover, DDM dispatchers, including Plaintiff Johnson, worked 48 to more than 60 hours per week performing dispatch services, and additional hours performing deliveries.

67. When working as a dispatcher, Defendants required that Plaintiff Johnson work eight hours per day from 10:00 am to 6:00 pm six days per week during his dispatcher shift, and up to fifteen additional hours making deliveries outside of his dispatcher shift.

68. Upon information and belief, Defendants did not record the number of hours worked by delivery drivers in violation of FLSA and NYLL regulations that require employers to maintain such records.

69. However, DDM delivery driver work schedules can be reconstructed based on the delivery time stamps in Defendants' delivery records.

70. Plaintiff Dwayne McClary worked for Defendants as a delivery driver and dispatcher, performing duties substantially similar to those described above, including picking up deliveries from DDM dispatch locations and delivering packages to patients and medical facilities in New York.

71. Plaintiff McClary worked for Defendants from approximately June 2019 to approximately July 2025. During that time, Defendants classified Plaintiff McClary as an independent contractors rather than as an employee, as part of Defendants' misclassification scheme described above.

72. Plaintiff McClary regularly worked in excess of forty hours in a workweek, and regularly worked approximately sixty hours in a workweek.

73. Despite regularly working more than forty hours in a workweek, Defendants did not pay Plaintiff McClary an overtime premium of one and one-half times his regular rate of pay for the hours he worked in excess of forty hours per week.

74. As a result of Defendants' misclassification of Plaintiff McClary as an independent contractor, Defendants failed to pay Plaintiff McClary the minimum wage and overtime premium pay to which he was entitled under the FLSA and NYLL.

75. Until approximately 2020, Plaintiff McClary was paid an hourly rate. From approximately 2020 until approximately 2025, Plaintiff McClary was paid a fixed salary for shuttle deliveries, with additional payments for occasional non-shuttle deliveries.

76. After accounting for mileage and other expenses Plaintiff McClary incurred in performing his job duties, his wages fell substantially below the minimum wage required by the FLSA and NYLL in each year of his employment.

**Unlawful Deductions and Tax Burden Shifting**

77. Defendants took unlawful deductions from the pay of Plaintiffs and other similarly situated DDM dispatchers and delivery drivers for payment processing fees of $57.00 for each two-week pay period.

78. The image below is a copy of Plaintiff Johnson's payment receipt for dispatcher work performed for DDM between June 6 and June 20, 2021. The receipt indicates that Plaintiff Johnson was classified as an independent contractor and includes the $57.00 deduction.

Reference Num: 8051824

PO

***FOR OWNER OPERATOR SERVICES***

6/25/2021
12:30:17PM

**Jason G Johnson**

**IC Number:** 1[redacted]

Federal EIN: [redacted]

***For Services Provided From: 6/7/2021 to 6/20/2021***

| ***ITEM*** | ***AMOUNT*** | [redacted] | ***EAR-TO-DATE*** |
|---|---|---|---|
| Settlement | $800.00 | | $23,293.00 |
| ***Total Revenues*** | **$800.00** | | **$23,293.00** |
| SCI Program Fee (P-NY)* | ($57.00) | | ($741.00) |
| Loan | $0.00 | | ($250.00) |
| ***Total Deductions*** | **($57.00)** | | **($991.00)** |
| ***NET PAYMENT*** | **$743.00** | ***YTD 1099 TAXABLE INCOME*** | [redacted] |

*The email address we have on file for you is* [redacted]

79. Through their misclassification scheme, Defendants shifted their tax burden onto Plaintiffs and other similarly situated drivers and dispatchers by requiring them to pay Defendants' employer-side FICA contributions and other taxes. By treating Plaintiffs as independent contractors and issuing Form 1099s rather than W-2s, Defendants required Plaintiffs and other similarly situated drivers and dispatchers to pay self-employment taxes equivalent to both the employee and employer shares of FICA and other taxes.

**Wage Statements and Notifications of Pay Rate**

80. At all relevant times, Defendants failed to issue wage statements to Plaintiffs and all other DDM dispatchers and delivery drivers that complied with New York Labor Law § 195(3).

81. Defendants did not provide DDM dispatchers and delivery drivers, including Plaintiffs, with employee wage statements.

82. Defendants issued 1099 payment receipts, but such receipts failed to indicate the number of hours worked, applicable overtime rates, or any information identifying DDM as their employer.

83. Defendants did not issue notifications of pay rate or written notice of pay rate changes to Plaintiffs and similarly situated DDM dispatchers and delivery drivers that complied with New York Labor Law §§ 195(1)(a), and 195(2).

84. Defendants DDM, Martins, and Mayers changed Plaintiff Kwaak's pay rate and method of payment in approximately March 2020 and again in approximately March 2022, but did not issue notifications of pay rate to Kwaak at such times.

85. Defendants changed Plaintiff Johnson's pay rate and method of payment in 2021 when his position was changed from dispatcher to delivery driver but did not issue any notification of pay rate to Johnson at such time.

86. Defendants failed to provide Plaintiffs and other DDM drivers and dispatchers any notice of their entitlement to overtime premium pay when working more than forty hours a week but instead led them to believe that they were not entitled to overtime.

87. Had Defendants issued such notifications of pay rate, they would have exposed the unlawful nature of their Driver Misclassification and No Overtime Premium Policy to Plaintiffs and other dispatchers and delivery drivers.

88. Defendants prevented Plaintiffs and other DDM delivery drivers and dispatchers from identifying the DDM Defendants as their employers, timely challenging their misclassification as independent contractors, and timely advocating for their unpaid wages, which Plaintiffs and other DDM dispatchers and delivery drivers would have used to afford necessities to improve their standard of living.

89. Throughout their term of employment, Plaintiffs were unaware that they had been misclassified as independent contractors, and that, as non-exempt employees, they were entitled to be paid minimum wage and overtime premium pay.

90. Plaintiff Kwaak became aware that Defendants had misclassified him as an independent contractor in 2025 after the statute of limitations had expired on claims that accrued more than six years, two-hundred twenty-eight days prior to the filing of this Action. Had he known about the misclassification, he would have asserted his rights sooner.

91. Similarly, Plaintiff Johnson did not learn that Defendants had misclassified him as an independent contractor until later in 2025. Had he known that he would have asserted his rights sooner.

92. At the time of his hiring, Defendants failed to provide Plaintiff McClary with a wage notice containing the information required by New York Labor Law § 195(1)(a).

93. Defendants also failed to furnish Plaintiff McClary with accurate wage statements containing the information required by New York Labor Law § 195(3) on each occasion that he was paid.

94. As a result of Defendants' violations of New York Labor Law § 195, Plaintiff McClary was injured, including by being deprived of accurate information regarding his rate and basis of pay, overtime rate, and other information necessary to determine whether he was paid all wages owed to him.

**CLASS ACTION ALLEGATIONS**

95. Plaintiffs bring this action as a prospective class action on behalf of themselves, and all other persons similarly situated.

96. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, for purposes of their state law claims, Plaintiffs seek the certification of a class of all persons who, during the relevant period from six years 228 days from the filing of the Complaint to the date of final judgment in this matter, are working or have worked for DDM Defendants as a non-exempt delivery driver and/or dispatchers (hereinafter referred to as the "DDM Driver/Dispatcher Class").

97. Moreover, Plaintiffs seek the certification of a subclass of all DDM Driver/Dispatcher Class members who performed services for DDM in New Jersey, during the relevant period from six years prior to the filing of the initial Complaint in this action to the date of final judgment in this matter ("The NJ Subclass").

98. The DDM Driver/Dispatcher Class and NJ Subclass are so numerous as to make it impracticable to join all members of the class as plaintiffs.

99. The DDM Driver/Dispatcher Class and NJ Subclass includes more than forty similarly situated dispatchers and delivery drivers who have not been paid overtime

premium pay when working more than forty hours in a workweek, were subject to unlawful deductions, and have not received wage statements or notifications of pay rate in compliance with NYLL § 195(1)(a), 195(2), and 195(3).

100. Members of the DDM Driver/Dispatcher Class and NJ Subclass would benefit from the issuance of a court-supervised notice of the lawsuit and the opportunity to opt out of a certified class.

101. There are questions of law and fact common to all members of the class, and those questions predominate over any question affecting only individual class members. Defendants have acted on grounds generally applicable to all class members, in that Defendants' acts and omissions constitute a violation of the wage laws of the State of New York.

102. Common questions of law and fact include, but are not limited to, the following:

a. Whether each of the Defendants was a joint employer of their delivery drivers and dispatchers;
b. Whether Defendants misclassified their delivery drivers and dispatchers as independent contractors rather than employees under the NYLL;
c. Whether Defendants misclassified their delivery drivers and dispatchers who performed work in New Jersey under the strict ABC test for independent contractor misclassification;
d. Whether Defendants failed to pay their delivery drivers and dispatchers overtime

wages at the greater of one and one-half times their regular rate of pay or the New York minimum wage for hours worked in excess of forty hours;

e. Whether Defendants made unlawful deductions from the pay of their delivery drivers and dispatchers;

f. Whether Defendants systematically failed to provide delivery drivers and dispatchers wage payment statements as required by the New York Labor Law § 195(3); and

g. Whether Defendants systematically failed to furnish their delivery drivers and dispatchers with Wage Theft Prevention Act notifications of pay rate as required by the New York Labor Law §§ 195(1)(a) and 195(2); and

h. Whether Defendants can satisfy their burden of proving a good faith basis for believing that any underpayment of wages complied with the law.

103. Plaintiffs' claims are typical of the claims of all class members, and Defendants' anticipated affirmative defenses thereto are typical of the Defendants' anticipated affirmative defenses to the claims of other class members.

104. Plaintiffs will fairly and adequately protect the interests of all class members in the prosecution of this action and the administration of all matters relating to the claims of the class. Plaintiffs are similarly situated to other class members and have suffered similar injuries to those suffered by the members of the class they seek to represent.

105. Plaintiffs have retained counsel capable of handling class action suits.

Neither Plaintiffs nor their counsel has any interest that conflicts with the class, or which might cause them not to vigorously pursue this action.

106. Pursuant to F.R.C.P. 23(b)(1), class certification is appropriate here because the prosecution of separate actions by class members could result in either inconsistent adjudications establishing incompatible pay practices or could, as a practical matter, dispose of the legal claims of class members not parties to such separate adjudications.

107. Pursuant to F.R.C.P. 23(b)(3), class certification is appropriate here because questions of law or fact common to members of the class predominate over any questions affecting only individual members and because a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS**
**(Overtime Violations: FLSA)**

108. Plaintiffs Kwaak and McClary repeat and reallege the previous allegations as if fully set forth herein.

109. Plaintiffs Kwaak and McClary bring this claim on behalf of themselves and all similarly situated delivery drivers and dispatchers within the last three years who opt in to the action.

110. At all relevant times, Defendants have been, and continue to be, "employers" engaged in the interstate "commerce" and/or in the production of "goods" for "commerce" within the meaning of the FLSA, 29 U.S.C. § 203, 207(a), and 207(a)(1).

111. At all relevant times, DDM has had gross operating revenues in excess of $500,000.00 per year and satisfies the threshold test for the "enterprise" requirement under the FLSA.

112. Defendants willfully failed to pay Kwaak overtime premium wages for hours worked in excess of forty hours per week, to which he was entitled under 209 U.S.C. 206(a), in violation of 29 U.S.C. 207(a)(1).

113. Defendants' violations of the FLSA have been willful and intentional. Defendants have not made a good faith effort to comply with the FLSA with respect to compensation of DDM delivery drivers and dispatchers.

114. Due to Defendants' FLSA violations, Plaintiffs Kwaak, McClary and other similarly situated delivery drivers and dispatchers are entitled to recover from Defendants, jointly and severally, their unpaid wages and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to the FLSA, specifically 29 U.S.C. §216(b).

**AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANTS**
**(Overtime Violations: New York Labor Law)**

115. Plaintiffs repeat and reallege the previous allegations as if fully set forth herein.

116. This cause of action is brought against Defendants for failure to pay overtime for work performed by Plaintiffs and prospective Class Members in excess of forty hours per week pursuant to NYLL §191, 663(1).

117. At all times relevant to this action, Defendants were Plaintiffs' employers

within the meaning of New York Labor Law §§ 2 and 651 and regulations promulgated thereunder.

118. At all times relevant, Plaintiffs were Defendants' non-exempt employees within the meaning of New York Labor Law §§ 2 and 651.

119. Defendants required, suffered, or permitted Plaintiffs to work overtime and willfully failed to pay them overtime compensation of one and one-half times the regular rate of pay for each hour in excess of forty hours in a workweek as required under New York Labor Law § 650; 12 NYCRR § 142-2.2.

120. As a result of Defendants' New York Labor Law violations, Plaintiffs and the Class are entitled to recover from Defendants, jointly and severally, amounts proven at trial for unpaid overtime wages, liquidated damages, reasonable attorney's fees, and the costs and disbursements of the action, pursuant to New York Labor Law § 663(1).

**AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANTS**
**(Violation of the Wage Theft Prevention Act: New York Labor Law)**

121. Plaintiffs repeat and reallege the previous allegations as if fully set forth herein.

122. New York Labor Law § 195(1)(a) requires Defendants to provide Plaintiffs with notifications of pay rate at the commencement of their employment, in both English and their primary language, and to preserve those records for a period of six years.

123. New York Labor Law § 195(2) requires Defendants to provide Plaintiffs with notifications in writing of any changes in pay rate information.

124. Those statements must include: the employee's rate or rates of pay, including overtime rate of pay, where applicable; how the employee is paid; and any allowances taken as part of the minimum wage, and information identifying the employer.

125. Defendants failed to furnish Plaintiffs and the DDM Driver/Dispatcher Class with notifications of pay rate in violation of the Wage Theft Prevention Act.

126. Due to Defendants' violation of New York State Law, Plaintiffs are entitled to recover from Defendants an award of statutory damages pursuant to NYLL 195(1)(a); 198(1-b) plus costs, interest, and reasonable attorneys' fees.

**AS AND FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANTS**
**(Violation of the Wage Theft Prevention Act: New York Labor Law)**

127. Plaintiffs repeat and reallege the previous allegations as if fully set forth herein.

128. New York Labor Law § 195(3) requires Defendants to provide their employees with wage statements with every payment of wages listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

129. Defendants failed to furnish Plaintiffs and the Class with wage statements in compliance with the Wage Theft Prevention Act.

130. Due to Defendants' violation of New York State Law, Plaintiffs are entitled to recover from Defendants an award of statutory damages pursuant to NYLL 195(3)(a); 198(1-d) plus costs, interest, and reasonable attorneys' fees.

**AS AND FOR A FIFTH CAUSE OF ACTION AGAINST DEFENDANTS**
**(Unlawful Deductions and Untimely Payment of Wages: New York Labor Law)**

131. New York Unlawful Deductions and Untimely Payment of Wages, NYLL §§ 191, 193.

132. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

133. Defendants have willfully reduced the wages of Plaintiffs and the members of the DDM Driver/Dispatcher Class by making unlawful deductions from their wages.

134. In addition, Defendants have required Plaintiffs and the Class to incur expenses for Defendants' benefit without reimbursement.

135. The required and unreimbursed expenses incurred by Plaintiffs and the members of the Class for the benefit of Defendants were unlawful deductions from the wages of Plaintiffs and the Class members, in violation of NYLL Article 6, § 193.

136. Defendants willfully failed to pay Plaintiffs and the Class all compensation owed them on time, in violation of NYLL § 191.

137. Due to these violations, Plaintiffs and the members of the Class are entitled to recover from Defendants deductions from their wages, liquidated damages,

reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

**AS AND FOR A SIXTH CAUSE OF ACTION AGAINST DEFENDANTS**
**(Overtime: New Jersey Wage & Hour Law, N.J.S.A. 34:11-56a et seq.)**

138. At all relevant times, Plaintiffs were employed by Defendants within the meaning of the New Jersey Wage & Hour Law ("NJWHL").

139. Defendants willfully violated the rights of Plaintiffs and members of the NJ Subclass by unlawfully treating them as independent contractors and (i) failing to pay them overtime compensation at rates not less than one and one-half their regular rate of pay for each hour worked in excess of forty hours in a work week, and (ii) failing to pay them at least the legally mandated state minimum wage for every hour worked.

140. As a result of Defendants' violations of the NJWHL, Plaintiffs and members of the NJ Subclass have suffered damages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment and post judgment interest, and reasonable attorneys' fees and costs pursuant to the NJWHL.

**AS AND FOR A SEVENTH CAUSE OF ACTION AGAINST DEFENDANTS**
**(Illegal Deductions and Unreimbursed Expenses: New Jersey Wage & Hour Law, N.J.S.A. 34:11-4.4 et seq.)**

141. During the relevant period, Plaintiffs and members of the NJ Subclass were employed by Defendants within the meaning of the New Jersey Wage Hour Law ("NJWHL").

142. Under the New Jersey Wage Payment Law, no employer may withhold or divert any portion of an employee's wages. N.J.S.A. 34:11-4.4 et seq.

143. Plaintiffs and other delivery drivers were also not paid for all of their unreimbursed workplace expenses, including but not limited to tolls, gasoline, and vehicle maintenance expenses.

144. Defendants illegally misappropriated, withheld, and diverted portions of the wages of Plaintiff and other class members employed in New Jersey.

145. As a result of Defendants' violations of the NJWPL, Plaintiffs and the NJ Subclass have suffered damages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, and reasonable attorneys' fees and costs pursuant to the NJWHL.

**AS AND FOR AN EIGHTH CAUSE OF ACTION AGAINST DEFENDANTS**
**(Fraudulent Filing of Information Returns: 26 U.S.C. § 7434)**

146. Plaintiffs repeat and reallege the previous allegations as if fully set forth herein on behalf of themselves and other class members.

147. At all relevant times, Defendants were required by law to file accurate information returns with the Internal Revenue Service ("IRS") reporting all compensation paid to Plaintiff Kwaak and other class members.

148. Defendants paid Plaintiff Kwaak and other similarly situated drivers and dispatchers a portion of their compensation in cash, off the books, and did not report that cash compensation to the IRS on any information return, including but not limited to IRS Form 1099-NEC or W-2.

149. By issuing information returns, including IRS Form 1099s, to Plaintiff Kwaak and other similarly situated drivers and dispatchers that reported only a portion of the total compensation actually paid to him, and by omitting the cash compensation paid off the books, Defendants willfully filed fraudulent information returns that understated the amounts paid to Plaintiff Kwaak.

150. Defendants' practice of paying Plaintiff Kwaak partially in unreported cash was willful and intentional, undertaken for the purpose of evading payroll tax obligations, avoiding employee benefit contributions, and concealing the true scope of the employment relationship.

151. Defendants' fraudulent filing of information returns was not limited to the omission of cash wages. By issuing IRS Form 1099s rather than W-2s for all compensation paid to Plaintiff Kwaak, Defendants filed information returns that falsely characterized Plaintiff Kwaak as a self-employed independent contractor rather than an employee for all years of his employment, causing him to bear the full 15.3% self-employment tax burden on his reported earnings, when he was entitled to pay only the 7.65% employee share of FICA taxes.

152. Defendants' fraudulent 1099 misclassification and underreporting of their compensation caused Plaintiff Kwaak and other similarly situated drivers actual damages, including but not limited to: (a) the excess self-employment taxes paid by Plaintiff Kwaak on all compensation paid by Defendants, including both reported and unreported wages, attributable to Defendants' issuance of IRS Form 1099s rather than

W-2s, which caused Plaintiff Kwaak to pay self-employment tax at the full rate of 15.3% on his earnings rather than the employee rate of 7.65%, thereby shifting Defendants' employer-side FICA obligation of 7.65% onto Plaintiff Kwaak; (b) potential tax liability arising from Defendants' failure to withhold and remit applicable taxes on the unreported cash payments; (c) the loss of Social Security and Medicare credits attributable to unreported earnings; (d) the cost of professional services required to address IRS reporting discrepancies; and (e) other consequential damages to be proven at trial.

153. By reason of the foregoing, Defendants are liable to Plaintiff Kwaak and other similarly situated drivers and dispatchers pursuant to 26 U.S.C. § 7434 for the greater of $5,000 for each violation or the sum of (i) any actual damages sustained as a proximate result of the fraudulent filing, (ii) the costs of the action, and (iii) reasonable attorneys’ fees.

**AS AND FOR A NINTH CAUSE OF ACTION AGAINST DEFENDANTS**
**(Unjust Enrichment)**

154. Plaintiffs repeat and reallege the previous allegations as if fully set forth herein.

155. By misclassifying Plaintiffs and other class members as independent contractor, Defendants avoided paying legally mandated employer-side payroll taxes and contributions on all wages paid to them, including federal FICA contributions (7.65% of all wages), New York State unemployment insurance contributions, the Metropolitan Commuter Transportation Mobility Tax, and, to the extent applicable, New York City and

other local employer-side payroll taxes and obligations, retaining those sums for their own benefit.

156. As a direct result of Defendants' misclassification, Plaintiffs and other class members were required to pay self-employment taxes at the full 15.3% rate rather than the 7.65% employee share, effectively absorbing Defendants' employer-side FICA obligation, and was simultaneously deprived of the unemployment insurance, New York State disability benefits, and New York Paid Family Leave coverage to which they were entitled as employees.

157. Defendants have no legal or equitable justification for retaining the financial benefit of the payroll tax obligations they avoided over the approximately nine years of Plaintiffs' and other class members' employment, and it would be inequitable and unjust to permit them to do so.

158. By reason of the foregoing, Defendants are liable to Plaintiffs and other class members for the full value of all employer-side payroll tax contributions avoided and benefits wrongfully withheld during the relevant period, in amounts to be determined at trial, together with pre-judgment and post-judgment interest.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, demand as follows:

A. A ruling conditionally certifying the Collective Class, an order authorizing the issuance of the notice to the members of the Collective, and an opportunity to opt-in to the action;

B. An Order Certifying the DDM Driver/Dispatcher Class and the NJ Subclass pursuant to Rule 23 of the Federal Rules of Civil Procedure; designating Plaintiffs as class representatives; and designating Plaintiffs' counsel as class counsel;

C. An award to Plaintiffs and any opt-in Plaintiffs under the FLSA, NYLL, NJWPL, and NJWHL, for unpaid overtime, unreimbursed expenses, and illegal deductions in an additional amount as liquidated damages pursuant to each statute;

D. An award to Plaintiffs, any opt-in Plaintiffs, and Class Members for statutory damages for Defendant's violations of the pay rate notification provisions of the Wage Theft Prevention Act;

E. An award to Plaintiffs, any opt-in Plaintiffs, and Class Members for statutory damages for Defendant's violations of the wage statement requirements of the Wage Theft Prevention Act;

F. An award to Plaintiffs, any opt-in Plaintiffs, and Class Members for pre-judgment and post-judgment interest;

G. An award to Plaintiffs and any opt-in Plaintiffs and Class Members for the cost of this action, together with reasonable attorneys' fees;

H. An award to Plaintiff Kwaak and other opt-in Plaintiffs and Class Members pursuant to 26 U.S.C. § 7434 for the greater of $5,000 per violation or the sum of actual

damages sustained as a proximate result of Defendants' fraudulent filing of information returns, together with costs and reasonable attorneys' fees; and

I. An award to Plaintiff Kwaak and other opt-in Plaintiffs and Class Members for the full value of all employer-side payroll tax contributions avoided by Defendants and the value of unemployment insurance, disability benefits, and paid family leave coverage of which Plaintiff Kwaak was deprived as a result of Defendants' misclassification, in amounts to be determined at trial, together with pre-judgment and post-judgment interest; provided that the awards sought under 26 U.S.C. § 7434, unjust enrichment, and this paragraph are pleaded in the alternative and Plaintiffs do not seek duplicative recovery for the same elements of damages; and

J. Such other and further relief as this Court may deem necessary and proper.

Dated: Lynbrook, New York
October 29, 2026

**THE MARLBOROUGH LAW FIRM, P.C**

*By:* Christopher Marlborough [signature]
____________________________

Christopher Marlborough (CM6107)
375 Sunrise Highway, Suite 3
Lynbrook, New York 11563
(212) 991-8960
chris@marlboroughlawfirm.com

Matthew B. Weinick
FAMIGHETTI & WEINICK, PLLC
25 Melville Park Rd #235,

Melville, NY 11747
(631) 352-0050
mbw@fwlawpllc.com

*Attorneys for Plaintiffs*